IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHS CORP., a Delaware Corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) |
| Plaintiff, | ) No. 16-55 ) |
| v. | ) Judge Anita B. Brody ) |
| SINGER FINANCIAL CORPORATION, PAUL SINGER, and JOHN DOES 1-12,, | ) Magistrate Judge David R. Strawbridge ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
AMENDED MOTION FOR CLASS CERTIFICATION**

Plaintiff KHS Corporation ("Plaintiff" or "KHS"), by counsel, respectfully submits this memorandum of law in support of its amended motion for class certification pursuant to Fed. R. Civ. P. 23. In support, Plaintiff states:

## I. INTRODUCTION.

Defendants Singer Financial Corporation ("Singer Financial") and Paul Singer ("Mr. Singer") sent over 30,000 faxes to over 2,200 unique recipients between June 2014 and June 2016. Plaintiff KHS received eight of those faxes, including three attached to the Complaint. ECF 1, Ex. A-C. Defendants cannot establish that they received express invitation or permission from KHS or the other targeted recipients before sending the faxes. Plaintiff alleges claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and for conversion. Plaintiff seeks class certification only to resolve the TCPA claim.

The TCPA relies on private enforcement. The TCPA forbids the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227 (b) (1) (C). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227 (a) (5). Junk faxing has been called "advertising by theft," because the recipient is forced to pay the costs of printing and distribution.

If the sender of an otherwise unsolicited fax advertisement alleges and proves that it has an "established business relationship" ("EBR") with the recipient, the TCPA still imposes liability unless the fax contained specific, required opt-out language on its first page. 47 U.S.C. 227(b)(2)(D);  47 C.F.R. § 64.1200(a)(4)(iii)(A), (f)(3). Any fax advertisement sent to an EBR recipient without compliant opt-out language is itself in violation of the TCPA. Defendants' faxes did not include a compliant opt-out notice.

Defendants used a software program, ActiveFax, to send the faxes. The ActiveFax software creates logs of successfully sent faxes, showing the number of faxes, the dates faxes were sent, the recipients, and their contact information. Although Defendants deleted these fax logs during the pendency of this case, Plaintiff's technical expert was able to recover the logs.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the class comprised of themselves and all persons to whom

Defendants sent one or more form advertisements by fax from June 24, 2014 to June 22, 2016, stopping only several months after Plaintiff filed suit. (Plaintiff's proposed class definition is set forth below.) All the requirements of Rule 23 are met. The case presents no predominating individual issue of law or fact, and the merits of the case can be resolved on a class-wide basis. Because the claims of each individual class member are too modest to justify an individual lawsuit, a class action is the only effective means of resolving this controversy. Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint their counsel as class counsel.

## II.     FACTS.

### A.     The Parties.

KHS is a Pennsylvania corporation that operated a machine shop in Huntingdon Valley, Pennsylvania. ECF 1, ¶ 9. Its owners are two brothers, William Schwemlein and Karl H. Schwemlein. Ex. A (Wm. Schwemlein Dep.), pp. 6-7 Karl H. Schwemlein is the President. Ex. A, p. 9.

Singer Financial is a Pennsylvania corporation that provides commercial real estate financing, with its principal place of business in Philadelphia, Pennsylvania. Ex. B (Paul Singer Dep.), p. 7. As of August 2017, it had 15 to 20 outstanding loans. Ex. B, p. 8. Mr. Singer is its President and sole owner. Ex. B, pp. 6-7.

### B.     Defendants sent thousands of faxes.

During the period from June 24, 2014 to June 22, 2016, Defendants sent 54 total fax broadcasts describing the availability of commercial loans and real estate. Ex. C (Lee Howard Report), p. 13; Ex. B, pp. 99-100. Defendants used a software

application called ActiveFax to send the broadcasts, and the ActiveFax program created activity logs showing the fax numbers to which faxes were successfully sent. Ex. C, pp. 6-7

Defendants' ActiveFax logs show that the 54 broadcasts included a total of 30,706 faxes were sent to 2,297 unique receiving fax numbers. Ex. C, p. 13.

### C.     Faxes sent to KHS.

Defendants' ActiveFax logs show that its faxes were sent to KHS eight times between February and November 2015. Ex. C, p. 13. KHS collected three of those faxes and sent them to outside counsel to initiate this lawsuit. ECF 1, Ex. A-C.

### D.     Defendants did not obtain prior express permission to send the faxes.

Both principals of KHS, William Schwemlein and Karl H. Schwemlein, denied having ever given permission to Defendants to send faxes to KHS or to the KHS fax number. Ex. A, pp. 18-19; Ex. D (Karl Schwemlein Dep.), pp. 12-13; Ex. E (Plaintiff's Answers to Defendant's First Set of Interrogatories), Ans. to Int. 3. Indeed, both William and Karl H. Schwemlein testified that they had never spoken to Mr. Singer before this lawsuit was filed. Ex. A, pp. 13, 18-19; Ex. D, pp. 12-13.

Defendants' faxes were sent to fax numbers culled by Singer Financial employees from Mr. Singer's contact database. Ex. B, pp. 26-27. The database contained 2,500 to 3,500 entries from time to time that Mr. Singer had collected over his career of 25 years. Ex. B, pp. 28-29.

The KHS fax number was included in Paul Singer's contact database under the name of "Karl Schwemlein" listing the company name as "Ambassador Realty."

Ex. B, pp. 35-36 and Dep. Ex. 3.[1] Mr. Singer testified that there were two people named "Karl Schwemlein," a father and a son, and that he had spoken to the father. Ex. B, p. 32. He testified that he had never done business with either of them. Ex. B, p. 33

Mr. Singer claimed that he had gotten Mr. Schwemlein's contact information "all the way back in the '90s" and input the information for "Ambassador Realty" "back in the '90s." Ex. B, p. 35 Mr. Singer said he "never heard of KHS." Ex. B, p. 38. Mr. Singer initially claimed to recall that he was in his office in Philadelphia either on Locust Street or Walnut Street when he communicated by phone with Mr. Schwemlein. Ex. B, pp. 33, 43-45.

Mr. Singer admitted that he had no written evidence of any such permission: "Expressed, written documents, no." Ex. B, p. 78. Mr. Singer and defense counsel admitted that it would be speculation to determine whether anyone had specifically given specific permission to receive fax advertisements, and that permission was "implied":

> Q. Where were you when you had the conversation about receiving faxes?
>
> Mr. MUSI: You're causing, you're asking to speculate. He sadi he put this list together over 25 years. Now you're asking him each individual: Where did you met them?

---

[1] The Schwemlein brothers also own interests in a commercial center called Ambassador Center, Inc. Ex. A, pp. 11-12. Moreover, Ambassador Center, Inc., does not use the KHS fax number in its business operations. Ex. B, p. 12. Ambassador Realty, Inc. is a Pennsylvania company unrelated to KHS, the Schwemlein family, or Ambassador Center, Inc. Ex. F, PA Secretary of State Information for Ambassador Realty and Ambassador Center, pp. 1-2.

>   It calls for total speculation on its face.
>
>   BY MR. PIPER:
>
>   Q.   Is that that – is that true, Mr. Singer, that you'd have to speculate to answer that question?
>
>   A.   You know, you're showing me 46 pages of fax numbers, right, and I'm telling you that I had conversations with these people where they gave me implied permission to send them a fax.
>
>   Then you asked me did I have written documentation to that effect. And I said, No, with the exception of in some cases where people may have sent an email.
>
>   What I do know is that anybody in every fax we sent, if you don't want to get the fax, call us; send us a fax back. So I would say that in every case where there was clear intention not to receive a fax, we never sent any faxes. And it we did, it may have been an accident that happened one or two times, at most.

Ex. B, pp. 81-82.

Mr. Singer described the process of cold calling individuals to get and update contact information in his database. According to Mr. Singer, the inclusion of a person's fax number in the database constitutes express permission to receive faxes. However, when Mr. Singer recounted what he would say to people when he communicated with them, he reported generically asking if he could send them "information," and did not specifically mention faxing:

>   "Hi, Karl, How are you? I'm Paul Singer. I have a private finance company over in Philadelphia. From time to time we do hard-money lending. Could I possibly send you some information on my company?
>
>   "Yeah. No problem.
>
>   "What's your fax number? What's your mailing address?

> … "I may have asked for his email at that time.
>
> "Do you know anybody that's looking for private real estate financing?
>
> "No, not at this time.
>
> "Can I send you a flyer? If you come across somebody, could you possibly refer my name? Thank you so much."

Ex. B, pp. 43-44.

Mr. Singer testified that his processing of orally obtaining "general approval" to send information to his contacts was the same for everyone in his database. Ex. B, p. 77.

Both Mr. Singer and his assistant, a disbarred former attorney named John Licari, expressed the view that the faxes at issue are not advertisements, but merely "informational." Ex. B, p. 63; Ex. G, 41-43. According to Mr. Singer, "This is merely sending information about loan programs, interest rates, loan to values, and terms of loans….I believe it's not an advertisement." Ex. B, p. 63-65. Consistent with Mr. Singer's view, Mr. Licari testified that whenever Mr. Singer asked people if he could send them faxes, he was talking about "informational faxes," not advertisements: "I know that I have heard him numerous times that he always asks people if it is okay for him to send them informational faxes, if it is okay to email them." Ex. G, pp. 39-40.

### III. ARGUMENT.

#### A. Applicable legal standards.

To achieve class certification, Plaintiff must demonstrate that Rule 23 (a)'s four prerequisites are satisfied: (1) that the proposed class is so numerous that

joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23 (a).

In addition to satisfying the requirements of Rule 23 (a), Plaintiff must satisfy one of the subsections of Rule 23 (b). Fed. R. Civ. P. 23 (b). Here, Plaintiff seek certification under Rule 23 (b) (3), and therefore must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23 (b) (3).

### B.  The weight of authority favors class certification in this case.

Class actions promote judicial economy by aggregating small claims into one lawsuit. "Class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1977) (class actions aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor").

Class certification is "normal" under the TCPA because generally the main questions surrounding liability are common to all members. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an

advertisement, are common to all recipients."). Accordingly, a number of circuit courts have affirmed class certification in TCPA cases. *Id. Accord Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (6th Cir. 2016) (citing *Turza*); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489 (7th Cir. 2013) (affirming certification).

The Third Circuit Court of Appeals recently vacated a district court order that denied class certification of a TCPA junk fax claim. *City Select Auto Sales, Inc. v. BMW Bank of North America,* 867 F.3d 434 (3d Cir. 2017). District Courts in this Circuit have certified classes in a number of TCPA fax cases. *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014), *pet. for leave to appeal denied*, No. 14-8039 (3rd Cir. May 8, 2014); *A & L Industries, Inc. v. P. Cippollini, Inc.*, Civ. Action No. 12-07598, 2013 WL 5503303 (D.N.J. Oct. 2, 2013), *reconsideration denied*, 2013 WL 6145766 (D.N.J. Nov. 21, 2013), *pet. for leave to appeal denied*, No. 13-8094 (3rd Cir. Mar. 20, 2014); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.,* 296 F.R.D. 299 (D.N.J. 2013) The *David Randall* court later granted summary judgment for $22,405,000 in favor of the class. 96 F.Supp.3d 403 (D.N.J. 2015).[2]

---

[2] For a selection of rulings from other district courts around the country granting class certification in TCPA junk fax cases, *see G.M. Sign, Inc. v. Stealth Security Systems, Inc.,* No. 14 C 09249, 2017 WL 3581160 (N.D. Ill. 2017); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,* 311 F.R.D. 688, 699 (S.D. Fla. 2015) ("a class action is superior to other methods for adjudicating the putative class members' TCPA claims"); *Chapman v. Wagener Equities, Inc.*, No. 09 C 7299, 2014 WL 540250, at *3 (N.D. Ill. Feb. 11, 2014); *Dr. Robert L. Meinders D.C., Ltd. v. Emery Wilson Corp.*, No. 14-CV-596-SMY-SCW, 2016 WL 3402621, at *4 (S.D. Ill. June 21, 2016); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC,* No. 12-22330-CIV, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014) ("TCPA classes are routinely certified"); *C-Mart, Inc. v. Metropolitan Life Ins. Co.,* 299

### C. The proposed class definition and ascertainability.

#### 1. Proposed class definition.

Plaintiff proposes certification of the following class:

Each person sent one or more telephone facsimile messages during the period June 24, 2014 to June 22, 2016, from Singer Financial Corp. promoting the availability of commercial loans or real estate.

#### 2. Ascertainability.

In this Circuit, a Rule 23(b)(3) class must be "currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012).[2] To satisfy this standard, plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *BMW Bank of North America, Inc.*, 867 F.3d at 439.

Here the class is ascertainable based on Defendants' ActiveFax logs of the fax broadcasts. Those logs show the fax numbers, identities and contact information for the persons to whom the faxes were sent, along with images of the faxes themselves. Exhibit CZ to the Lee Howard report provides a list of the fax recipients based on those records. Ex. C, pp. 794-828.

---

F.R.D. 679 (S.D. Fla. 2014); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327 (E.D. Wis., 2012), *aff'd*, 704 F.2d 489 (7th Cir. 2013); *A Aventura Chiropractic Ctr. v. Med Waste Mgmt. LLC,* No. 12-21695-CIV, 2013 WL 3463489 (S.D. Fla. July 3, 2013) (granting motion for reconsideration and certifying TCPA class); *The Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio Jan. 30, 2012); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-10620, 2010 WL 5439737, at *2 (E.D. Mich. Dec. 27, 2010).

### D. All of the Rule 23 requirements are met.

#### 1. Numerosity.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23 (a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, Defendants' advertisements were sent over 30,000 times to 2,297 unique fax numbers making individual joinder infeasible. Ex. C, p. 13. Thus, the "numerosity" standard is satisfied. *See City Select*, 296 F.R.D. at 313; *Hawk Valley*, 301 F.R.D. at 182; *A&L Industries*, 2013 WL 5503303 at *2.

#### 2. Commonality.

Rule 23 (a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a) (2). The commonality requirement does not mandate "that all putative class members share identical claims, and that factual difference among the claims of the putative class members do not defeat certification." *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Weiss v. York Hospital*, 745 F.2d 786, 808-809 (3d Cir. 1984). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id*. "Because the requirement may be satisfied by a single common issue, it is easily met …" *Id*.

Defendants' common conduct toward Plaintiff and all of the other class members makes this case appropriate for class action treatment, as a number of

courts have recognized. *See, e.g., Hinman v. M and M Rental Ctr., Inc.,* 545 F. Supp. 802, 806-807 (N.D. Ill. 2008) (under circumstances where defendant's fax broadcasts were transmitted *en masse* based on a "leads" list, the question of express permission may be understood as a common question); *Kavu, Inc. v. Omnipak Corp., supra*, 246 F.R.D. 642, 646 (W.D. Wash. 2007) (same).

Here, Defendants engaged in standardized conduct involving a common nucleus of operative facts by faxing form advertisements for commercial loans and real estate. This case involves common fact questions about Defendants' faxing and common legal questions under the TCPA, such as: whether Defendants' faxes are "advertisements"; whether Defendants violated the TCPA by faxing advertisements without first obtaining prior express invitation or permission to do so; whether Plaintiff and the other class members are entitled to statutory damages; whether Defendants' acts were "willful" or "knowing" under the TCPA and, if so, whether the Court should treble the statutory damages; whether the faxes included compliant opt-out notices; and whether the Court should additionally enjoin Defendants from future violations of the TCPA. Resolution of these issues will affect all class members. *See City Select*, 296 F.R.D. at 314, 322 (Identifying six common questions); *Hawk Valley*, 301 F.R.D. at 182; *A&L Industries*, 2013 WL 5503303 at *3.

Therefore, the "commonality" requirement of Rule 23(a)(2) is satisfied.

### 3. Typicality.

Rule 23 (a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ.

P. 23 (a) (3). "The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). The typicality requirement does not require "that all putative class members share identical claims, and that factual differences among the claims of the putative class members do not defeat certification." *Neal*, 43 F.3d at 56. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id*. at 58. "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id*.

Here, class members all received Defendants' faxes promoting commercial loans or real estate. Each member's claim is based on the same legal theory as Plaintiff's. *See City Select*, 296 F.R.D. at 314; *Hawk Valley*, 301 F.R.D. at 182; *A&L Industries*, 2013 WL 5503303 at *2. To the extent that Defendants assert that class members gave permission to receive faxes, that is a common defense based on the same business practice testimony. Therefore, the "typicality" requirement of Rule 23(a)(3) is satisfied.

    4.  Adequacy of Representation.
      a.  Rule 23 (a) (4)'s Adequacy Requirement.

Rule 23 (a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a) (4). Fed. R. Civ. P. 23(a)(4); *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 303 (3d Cir.2005). "[A]dequate representation depends on two factors: (1) the plaintiff's attorney must

be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Hoxworth v. Blinder*, 980 F.2d 912, 923 (3d Cir. 1992); *Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170, 181 (3d Cir.2012) (Rule 23(a)(4) tests "the experience and performance of class counsel.")

Here, Plaintiff and the other class members seek statutory damages under the TCPA. There is no potential for conflicting interests. Plaintiff's principals understand their obligations and the nature of the claims, they have been actively involved in the litigation, and they are interested in representing the class and enforcing the TCPA. Thus, Rule 23 (a) (4)'s "adequacy" requirement is satisfied as to Plaintiff.

### b. Rule 23 (g)'s Class Counsel Adequacy Requirement.

Plaintiff's counsel are experienced lawyers and adequate counsel for the class. *See* Plaintiff's counsel's resumes, attached as Ex. G. They have been appointed as lead or co-lead counsel in many contested class actions, including but not limited to TCPA cases, and have recovered substantial monies for their clients and class members. They have been litigating TCPA claims since 2003, and have prosecuted dozens of such cases to successful resolution, including many class-wide settlements. Plaintiff's counsel will continue to commit adequate resources, both staffing and monetary, to ensure that the Class is properly represented in this case. *See Hawk Valley*, 301 F.R.D. at 183; *A&L Industries*, 2013 WL 5503303 at *3. Plaintiff's counsel are adequate.

5. **Predominance.**

"Predominance is found when common questions represent a significant part of the case and can be resolved for all members of the class in a single adjudication." *Delandro v. County of Allegheny*, No. 06-927, 2011 WL 2039099 at *9 (W.D. Pa. May 24, 2011). "To establish predominance, Plaintiff must show by a preponderance of the evidence that the elements of their claim can be proven by evidence common to all in their class." *Id*. In this case, no individualized issues are present. Plaintiff's claim is identical to the claims of the other class members. Because each class member is entitled to statutory damages in the same amount, there will be no need to conduct an individualized inquiry on the question of damages. *See City Select*, 296 F.R.D. at 314-15; *Hawk Valley*, 301 F.R.D. at 185-87; *A&L Industries*, 2013 WL 5503303 at *3. Thus, the predominance requirement is also satisfied.

Defendants might attempt to argue there are individualized issues as to whether particular class members gave prior express permission or invitation to receive the faxes. However, this argument fails. To begin with, "express permission or invitation" is an affirmative defense on which Defendants bear the burden of proof. *See, e.g., Paldo Sign and Display Co. v. Wagener Equities, Inc.,* 67 F. Supp. 3d 874, 884 (N.D. Ill. 2014); *Michel v. WM Healthcare Solutions, Inc.,* No. 1:10-cv-638, 2014 WL 497031 at *6 (W.D. Ohio Feb. 7, 2017). Here, there is no individualized evidence of "express permission or invitation," but only the meritless contention that permission was "implied" because of Mr. Singer's general practice of asking for fax numbers. *Arwa Chiropractic, P.C. v Med-Care Diabetic & Medical Supplies, Inc.,* -- F.R.D. --, No. 14 C 5602, 2017 WL 4339788 at *7 (N. D. Ill. Sept.

29, 2017)("At best, Defendants confused implied consent for the express consent required under the TCPA"). A defense that is proved by such common, generalized testimony does not defeat predominance of common issues. *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC,* 318 F.R.D. 712, 721 (N.D. Ill. 2016) ("question regarding prior express permission can be answered on a class-wide basis"). Finally, as a matter of law, Defendants' putative "permission" defense fails because, by his own testimony, Mr. Singer claims to have sought permission to send "information," not advertising, and the permission was generalized and not specific to particular faxes. *Ira Holtzman, C.P.A.,* 728 F.3d at 786 (explaining distinction between "advertisement" and purely informational fax for TCPA purposes).

### 6. Superiority.

Rule 23(b)(3) requires that a class action be the superior method for adjudicating the claims. Certifying a class is the "superior" way when the "'class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 615 (1997) (quoting Adv. Comm. Notes, 28 U.S.C. App., at 697). *See also Hawk Valley*, 301 F.R.D. at 190-91; *A&L Industries*, 2013 WL 5503303 at *4.

In this case, where common issues predominate, all of the other Rule 23 requirements are satisfied, the class includes numerous persons and the likely recovery is relatively small, a class action is far superior to the other available

methods for resolving this controversy. A class action is the *best* available method of adjudication that would be fair and efficient, and an individual case would result in a "negative value" for each individual plaintiff representing itself.

## IV. CONCLUSION.

For all the foregoing reasons, Plaintiff respectfully request that the Court grant its amended motion for class certification, certify this action as a class action, appoint Plaintiff as class representative, appoint its counsel as class counsel, and award such other and further relief as the Court deems just under the circumstances.

Dated: December 1, 2017              Respectfully submitted,

/s/ Jonathan B. Piper

Phillip A. Bock
Jonathan B. Piper
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Suite 1000
Chicago, IL 60602
Phone: (312) 658-5500
Fax: (312) 658-5555

Alan C. Milstein
Sherman, Silverman, Kohl, Rose & Podolsky
East Gate Center
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: 856-662-0700 Ext. 236

-18-

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the above and foregoing was served upon all interested parties using this Court's ECF filing system on December 1, 2017.

                                /s/ Jonathan B. Piper