IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| KHS CORP., | : | |
| --- | --- | --- |
| | : | |
| Plaintiff. | : | CIVIL ACTION |
| | : | No. 16-55 |
| v. | : | |
| | : | |
| SINGER FINANCIAL CORP., et al., | : | |
| Defendants. | : | |

March _26, 2019                                                                                   Anita B. Brody, J.

## MEMORANDUM

Plaintiff KHS Corporation ("KHS") brings suit against Singer Financial Corporation ("Singer Financial") and Paul Singer ("Singer") under the junk fax provision of the Telephone Consumer Protect Act ("TCPA"). The TCPA creates a private right of action, and allows a party to sue an individual or entity that sends it faxes that are advertisements and that are unsolicited. KHS contends that in 2015 Singer Financial sent it eight such faxes.

### I. FINDINGS OF FACT

On February 25, 2019, the Court held a bench trial. At trial, William Schwemlein, an officer of KHS, testified for KHS. With Defendants' consent, KHS introduced the deposition of its expert, Christopher Lee Howard, in lieu of live testimony. Paul Singer, the corporate officer of Singer Financial, testified on behalf of the defense. Upon consideration of the evidence presented at trial, I make the following findings.

KHS Corporation is a family business currently owned and operated by two brothers, William and Karl Schwemlein, and located in Huntingdon Valley, Pennsylvania. Its primary

1

business is manufacturing components for aircraft engines. When not in the manufacturing plant or visiting clients, the Schwemlein brothers work in a small office, adjacent to the manufacturing plant, that they shared only with their secretary. This office includes a fax machine, with the fax number 215-947-8388. KHS considers this fax machine to be necessary for its machine shop business because some clients preferred to send purchase orders and receive technical information by fax. Because of this, KHS has had a continuous policy of never giving permission to anyone to send faxed advertisements to its fax number.

Singer Financial Corporation is a private financial lending company. Paul Singer is the sole shareholder and corporate officer. It was Paul Singer's practice, beginning when he worked as a mortgage broker for another company in the early 1990s, to drive around and jot down posted phone numbers of commercial real estate companies. He would then call those numbers, identify himself, and ask if he could send some information about his business by fax. If the person on the other end of the phone gave Paul Singer a fax number, Paul Singer would add that fax number to his list of contacts.

When Paul Singer established Singer Financial in 1992, he brought with him his list of contact information for potential clients from his previous job, including fax numbers. Singer Financial has continued to maintain a list of fax numbers, and has sent thousands of faxes to the numbers on this list. Paul Singer decided when Singer Financial should send faxes and who the faxes should be sent to, and approved the content and design of the faxes.

At some point, an entry for "Ambassador Realty" was added to Singer Financial's database of fax numbers. Pl.'s Ex. 5. This entry included Karl Schwemlein's name and KHS's fax number. *Id*.

The Schwemlein brothers also owned and managed two commercial real estate entities in Philadelphia: Central Square Center, Inc., acquired in October 1992, and Ambassador Center, Inc., acquired in 1995. In 1995, the Schwemlein brothers posted signs listing the phone numbers they used for their commercial real estate business at Ambassador Square (the property owned by Ambassador Center, Inc.). They did the same thing in 2007 at Central Square Center. If someone were to call the phone numbers on the signs, a phone would ring in the KHS office.

If William or Karl Schwemlein received a cold call from a real estate company or lender, he would say that KHS was not interested. If the KHS secretary received a cold call from a real estate company, she was instructed to only take the caller's number, and no one at KHS would ever return the call. The Schwemlein brothers had a policy of never giving out the KHS fax number for any purpose related to their commercial real estate holdings. Although the Schwemlein brothers used business cards that listed the KHS fax number, they only gave these cards to visitors to the KHS plant or to potential KHS customers.

Singer Financial did not receive permission from KHS to send it faxed advertisements. While Paul Singer testified to a conversation in which he remembers receiving the KHS fax number from Karl Schwemlein, this conversation could not have occurred as described. Paul Singer testified that, in 1990 or 1991, when he was working for his previous employer, he drove past one of the commercial real estate properties owned by the brothers, wrote down the phone number on the sign, called the number, and spoke to Karl Schwemlein. During that phone call, Paul Singer testified, he identified himself and his business and asked if he could send information by fax. Karl then allegedly gave Paul Singer the KHS fax number, and Singer added it to his database of fax numbers.

3

It would have been impossible for Paul Singer to get Karl Schwemlein's number in this way in 1990 or 1991, because the Schwemlein brothers did not acquire any commercial real estate until October 1992, and did not post signs listing their phone number at any commercial real estate sites until 1995. In addition, if this conversation had occurred, it would have been inconsistent with the Schwemlein brothers' policy of never giving out KHS's fax number for any purpose related to their commercial real estate business.[1]

Nevertheless, in 2015, Singer Financial sent eight faxes to KHS's fax number.[2] KHS's expert, Christopher Lee Howard, analyzed Singer Financial's hard drive for evidence of faxes sent by Singer Financial and was able to recover images of seven of the eight faxes.[3] All seven faxes contained Singer Financial's name, logo, and contact information. They all communicated the availability of "loans," and all but one of the faxes stated that KHS offers "commercial or business loans secured by real estate." Five of the faxes included the phrase "funds available now" or "funds available today." A sixth fax included the phrase "loans approved in minutes!!" The faxes also stated the characteristics of the loans offered by Singer Financial, including the starting interest rate and the available loan amounts.

---

[1] Although Karl Schwemlein did not testify at trial, I credit William Schwemlein's account of his brother's practices related to handling cold calls from real estate companies or lenders and sharing KHS's fax number. The brothers spent almost all their workday together in the same small office, where they were privy to most of each other's phone calls and conversations.

[2] The faxes were sent on the following dates: February 15, 2015; March 28, 2015; April 5, 2015; May 25, 2015; June 15, 2015; August 15, 2015; August 29, 2015; and November 27, 2015. Howard Dep. at 18:11-20.

[3] When Paul Singer was shown these faxes at trial, he stated that the faxes had been sent by Singer Financial. The Singer defendants' counsel conceded at trial that the eighth fax, for which no image was recovered, was substantially similar to the other seven.

4

## II. CONCLUSIONS OF LAW

The Telephone Consumer Protection Act (TCPA) is "a remedial statute that was passed to protect consumers . . . ." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). Among other things, the TCPA creates civil liability for defendants who "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). An unsolicited advertisement is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). "Express consent is . . . . an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).

### A. <u>Singer Financial Corporation's Liability</u>

As discussed above, I found that Singer Financial sent eight faxes to KHS in 2015. *See supra* Section I. Therefore, the remaining issues as to Singer Financial's liability are: (1) whether these faxes were advertisements, and (2) whether these faxes were unsolicited.

#### 1. The faxes were advertisements

The TCPA defines an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5); *see also Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015) ("[A TCPA] advertisement is any material that promotes the sale . . . of any property, goods, or services available to be bought or sold so some entity can profit."). Financial services are a "good or service" that can be the subject of a TCPA advertisement. *See Vinny's Landscaping, Inc. v. United Auto Credit Corp.*, 207 F. Supp. 3d 746, 749-50 (E.D. Mich. 2016) (finding that a

5

fax informing the recipient of the availability of a personal bankruptcy program could be an advertisement under the TCPA). A fax is an advertisement as long as some portion of the fax advertises the commercial availability of a good or service. *See Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 687-88 (7th Cir. 2013) (finding that a fax in which 75% of the content delivered business advice and 25% of the content advertised the sender's services was an "unsolicited advertisement" under the TCPA).

The faxes here were plainly advertisements because they promoted the commercial availability of loans offered by Singer Financial. Six of the seven faxes for which images were recovered stated that Singer Financial offers "commercial or business loans secured by real estate," and the seventh stated that Singer Financial offered "loans." The faxes also included specific details about the loans offered by Singer Financial, including the starting interest rate and the available loan amounts. These faxes did not merely provide information about the loans offered by Singer Financial, but promoted the sale of these loans. The faxes emphasized that the loans could be obtained quickly, including the phrases "funds available now," "funds available today," and "loans approved in minutes!!" This language was not neutral information about Singer Financial's financial products, but was intended to persuade the reader to take out a loan from Singer Financial. Thus, all eight faxes sent from Singer Financial to KHS in 2015 were advertisements.[4]

**2. The faxes were unsolicited**

A fax is unsolicited if it "is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). As mentioned above,

---

[4] Although images of only seven faxes were produced at trial, the Singer defendants' counsel conceded at trial that the eighth fax was similar to the other seven. Because I find that all seven of the faxes for which images were produced were advertisements, I find that the eighth fax was as well.

*see supra* Section I, I do not credit the Singer Defendants' theory of consent. Because I do not credit Paul Singer's testimony that he received permission from Karl Schwemlein to send faxed advertisements in 1990 or 1991, there is no evidence of any express invitation or permission by KHS to receive faxes from Singer Financial. Even if the conversation did occur as Paul Singer described, he could only have received permission on behalf of his employer at the time, because the alleged conversation took place before Singer Financial was established in 1992. The faxes were unsolicited advertisements.

As a statutory exception to the general illegality of unsolicited faxed advertisements, the TCPA allows unsolicited faxed advertisements when (1) the sender and the recipient have an established business relationship, (2) the recipient voluntarily communicated its fax number to the sender or made its fax number available for public distribution, and (3) the fax contains a notice meeting certain requirements. 47 U.S.C. § 227(b)(1)(C). Defendants bear the burden of proof for this exception. *See Brodsky v. HumanaDental Ins, Co.*, 910 F.3d 285, 287 (7th Cir. 2018) (characterizing the statutory exception as an "affirmative defense"). Because Defendants presented no evidence that KHS and Singer Financial had an established business relationship or that KHS shared its fax number with Singer Financial, the exception does not apply.

### B. Paul Singer's Personal Liability

KHS asks the Court to find that Paul Singer is personally liable for the faxes sent by Singer Financial to KHS. KHS relies on the legal principle, applied by numerous district courts confronted with this issue, that common law personal-liability for corporate officers applies to TCPA violations. *See* Pl.'s Trial Mem. at 6-9. Under this theory, a corporate officer can be liable for faxes sent by his company if he participated in or directed the violation. *See Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967) ("The general, if not universal, rule is that an officer of a

7

corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort . . . unless he specifically directed the particular act to be done, or participated, or cooperated therein.") (quoting 3 Fletcher Cyclopedia of the Law of Corporations § 1137 (perm. ed. rev. 1965)); *see also Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.,* No. 14-C-5602, 2019 WL 527497, at *6-7 (N.D. Ill. Feb. 11, 2019) (collecting district court cases that apply the personal liability standard to the TCPA).

Recently, however, the Third Circuit, in extremely strong dicta, expressed doubt that "common-law personal-participation liability is available against corporate officers under the TCPA." *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 160 (3d Cir. 2018). Acknowledging that "Congress may establish statutory liability without expressly providing for it," the Third Circuit opined that "the argument that Congressional silence indicates an intent" to impose common-law personal-participation liability for TCPA violations is "a weak one at best," because "Congress has demonstrated in many statutes that it 'kn[ows] how to impose' personal-participation liability 'when it cho[oses] to do so.'" *Id*. at 161 (quoting *Cent. Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994)) (alterations in the original). Congress did not choose to impose this liability in the TCPA statute. *Id*.

The majority opinion's dicta also considered and rejected another possible source of personal liability for corporate officers under the TCPA: whether a corporate officer can be liable as a "sender" of unsolicited faxed advertisements. *City Select Auto Sales*, 885 F.3d at 159-60. Framing the question as "whether Congress and the FCC intended that we look behind the

corporate form and impose personal liability on officers who act on the corporation's behalf rather than their own.," the court suggested that courts should only hold an officer acting on the corporation's behalf liable where "the faxes were really sent on behalf of the individual instead of the entity." *Id*. at 160.[5]

Following the Third Circuit's lead in its majority opinion, I find that a corporate officer is not liable under the TCPA under common law personal liability principles. Therefore, even though Paul Singer personally directed and participated in the sending of unsolicited faxed advertisements to KHS, he is not personally liable. In addition, there is no evidence that the faxes were really sent on Paul Singer's behalf, rather than Singer Financial's behalf. The faxes were advertisements promoting Singer Financial's products and services, and were sent to individuals and entities that Singer Financial hoped to do business with as a corporation. Therefore, Paul Singer was not a "sender" under the TCPA, and is not personally liable under the text of the statute.

**C. Damages**

Under the TCPA's private right of action, a plaintiff may recover the actual monetary loss from a TCPA violation, or $500 in damages for each TCPA violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B). If a court finds "that the defendant willfully or knowingly violated" the TCPA, "the court may, in its discretion" award up to treble damages. 47 U.S.C. § 227(b)(3)(C). A defendant commits a willful and knowing violation of the TCPA if he or she sends an unsolicited faxed advertisement that he or she knows to be a violation of the TCPA. *Lary v. Trinity Physician Fin. and Ins. Servs.*, 780 F.3d 1101, 1106-7 (11th Cir. 2015).

---

[5] The minority opinion, also in dicta, takes the opposing view. *City Select Auto Sales*, 885 F.3d at 163-65.

Here, there is no evidence that Singer Financial willfully or knowingly sent unsolicited faxed advertisements to KHS. Singer Financial believed that, because KHS's fax number was listed in its database of contacts, it had received permission from KHS at some point. Additionally, KHS never asked Singer Financial to stop sending it faxed advertisements. Because of the lack of evidence of a willful and knowing violation, I decline to exercise my discretion to increase the damages above $500 per violation.

### III. CONCLUSION

Based upon the evidence presented at trial and an examination of the relevant law, I find that Singer Financial Corporation committed eight violations of the TCPA by sending eight unsolicited faxed advertisements to KHS Corporation. I also find that Paul Singer is not personally liable for these violations. I will enter judgment against Singer Financial in the amount of $4,000.00.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on 3/26/2019